[Cite as *Ohio Specialized Invests., Ltd. v. Campbell*, 2017-Ohio-1244.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| OHIO SPECIALIZED | : | JUDGES: |
| INVESTMENTS, LTD. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| -vs- | : | |
| | : | |
| BRIONA CAMPBELL | : | Case No. 2016CA00176 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Canton Municipal
                            Court, Case No. 2016-CVG-2096

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           March 31, 2017

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

ROBERT P. CAMPBELL                         DREW GONYIAS
2800 West Market Street                    1225 North Main Street
Akron, OH  44333                           North Canton, OH  44720

*Wise, Earle, J.*

{¶ 1}   Plaintiff-Appellant, Ohio Specialized Investments, LTD., appeals the July 26, 2016 judgment entry of the Canton Municipal Court finding appellant violated R.C. 5321.04(A)(1) and awarding damages to Defendant-Appellee, Briona Campbell.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   In January 2015, the Canton City Health Department ("health department") found an unacceptable level of lead in a home located on Milton Court in Canton, Ohio. Appellant was ordered to abate the hazard and submit a Certificate of Examination which it did not do.  In October 2015, the health department declared the property uninhabitable pursuant to R.C. 3742.40, failure to comply with lead hazard control order.  Lead hazard warning signs were placed on every entrance door.

{¶ 3}   On March 25, 2016, appellee entered into a rental agreement whereby she would rent the Milton Court home from appellant in exchange for $550.00 per month. Appellee paid appellant $850.00 as a security deposit and a utilities deposit.  She also paid $70.00 for prorated rent for March.  The first monthly rental payment was due on April 1, 2016.

{¶ 4}   As appellee was moving into the home and unpacking, she was made aware of a possible lead issue in the home.  She called the health department and was told the home was deemed uninhabitable due to an unacceptable level of lead.

{¶ 5}   Appellee did not make her first monthly rental payment on April 1, 2016.  On April 14, 2016, appellant posted on the home a three day notice to vacate.  Appellee did not vacate the home.

{¶ 6} On May 2, 2016, appellant filed a forcible entry and detainer action to evict appellee and recover money damages for unpaid rent and property damage. On May 4, 2016, appellee filed an answer and a counterclaim, followed by a first amended answer and counterclaim, and then a second amended answer and counterclaim filed on June 20, 2016. In her counterclaim, appellee alleged retaliatory eviction (R.C. 5321.02), breach of warranty of habitability (R.C. 5321.04), emotional distress, and violations of R.C. 5321.15 (refusal to return her belongings).

{¶ 7} A bench trial was held on July 25, 2016. By judgment entry filed July 26, 2016, the trial court found the home was uninhabitable because appellant had violated orders from the health department to abate the lead issue. The trial court determined because appellant violated R.C. 5321.04(A)(1), failure to comply with the requirements of the health code, it refused to enforce the provisions of the rental agreement, and dismissed appellant's complaint in its entirety. The trial court found in favor of appellee on her counterclaim of breach of warranty of habitability, and awarded her damages in the amount of $920.00 ($550.00 security deposit, $300.00 utilities deposit, and $70.00 in prorated rent), and ordered the return of her belongings. The trial court found against appellee on her counterclaims of retaliatory eviction, emotional distress, and violations of R.C. 5321.15.

{¶ 8} On August 9, 2016, appellant filed a motion for new trial. A hearing was held on August 30, 2016. By judgment entry filed August 31, 2016, the trial court denied the motion.[1]

---

[1]We note appellant did not file a notice of appeal on the August 31, 2016 denial of the motion for new trial, nor did it assign an error on the issue for our review.

{¶ 9}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 10} "THE TRIAL COURT ERRED IN FINDING A TECHNICAL VIOLATION OF OHIO REVISED CODE SEC. 5321.04(A)(1) TO BE GROUNDS FOR AN AWARD OF DAMAGES."

I

{¶ 11} In its sole assignment of error, appellant claims the trial court erred in awarding damages to appellee based on a technical violation of R.C. 5321.04(A)(1).  We disagree.

{¶ 12} In its judgment entry filed July 26, 2016, the trial court determined appellant violated R.C. 5321.04(A)(1) which states: "A landlord who is a party to a rental agreement shall do all of the following: (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety."

{¶ 13} In reaching this determination, the trial court found the following:

Plaintiff is the owner of a home located at 814 Milton Court N.W. Canton, Ohio 44708.  Plaintiff leased the home to tenants.  A minor child of a tenant contracted lead poisoning.  The child was medically tested and found to have an elevated lead blood level.  The Canton City Health Department (Stark County Health Department) investigated the allegations. An inspection of the home on January 5, 2015 indicated an unacceptable presence of lead.  Orders were issued on January 22, 2015 by the Health

Department that the home was uninhabitable. Plaintiff did not appeal these findings within the ninety day appeal period. The Health Department posted signs on all entrances of the house as to the lead hazard. Plaintiff did not properly abate the presence of the lead. Plaintiff violated the orders of the Health Department by leasing the home to Defendant.

The signs that were posted by the Health Department were removed prior to Plaintiff showing the home to Defendant.

{¶ 14} R.C. 3742.40 governs failure to comply with lead hazard control order and states the following:

If the owner and manager of a residential unit, child care facility, or school fails or refuses for any reason to comply with a lead hazard control order issued under section 3742.37 of the Revised Code, the director of health or board of health that issued the order shall issue an order prohibiting the owner and manager from permitting the unit, facility, or school to be used as a residential unit, child care facility, or school until the unit, facility, or school passes a clearance examination. On receipt of the order, the owner or manager shall take appropriate measures to notify each occupant, in the case of a residential unit, and the parent, guardian, or custodian of each child attending the facility or school, in the case of a child care facility or school, to vacate the unit, facility, or school until the unit, facility, or school passes a clearance examination. The director or board

shall post a sign at the unit, facility, or school that warns the public that the unit, facility, or school has a lead hazard. The sign shall include a declaration that the unit, facility, or school is unsafe for human occupation, especially for children under six years of age and pregnant women. The director or board shall ensure that the sign remains posted at the unit, facility, or school and that the unit, facility, or school is not used as a residential unit, child care facility, or school until the unit, facility, or school passes a clearance examination.

{¶ 15} During the bench trial, the trial court heard from Rick Miller, Lead Risk Assessor for the health department. T. at 49-50. Mr. Miller testified he performed a lead risk assessment on the subject home, completing the inspection on January 5, 2015. T. at 51, 54. The inspection and tests established an unacceptable lead level in the home. T. at 54; Defendant's Exhibit B. Mr. Miller issued an order to appellant on January 22, 2015, to abate the lead in the home. T. at 56. A property owner is given ninety days to abate known lead hazards. *Id.* Because Mr. Miller never heard back from appellant within the ninety day period, he posted on the home in June 2015 a citation for a hearing. T. at 55-57. On June 26, 2015, appellant's "managing member," Todd Cleavenger, contacted Mr. Miller and asked for a copy of the January order and for an extension to abate the lead. T. at 13, 57-58. Mr. Miller granted the extension to August 30, 2015. T. at 59.

{¶ 16} Mr. Miller explained any contractor hired to abate the lead is required to submit a Method of Control Form to the health department to ensure the work is being done correctly, as well as a work notification form with the Ohio Department of Health. T.

at 59-60. Mr. Miller further explained: "So you just can't have Joe Schmo come in and - - and change out doors. You can't just have your - - a regular maintenance man come in and do painting. It's not that way at all. It has to be done by a licensed lead abatement contractor." T. at 73. Once the work is completed, a clearance examination is conducted and if passed, a Certificate of Examination is submitted to the health department. T. at 61.

{¶ 17} Because a Certificate of Examination was never submitted to the health department, Mr. Miller posted another hearing notice on the home and mailed a notice to appellant of a hearing scheduled for September 28, 2015. T. at 63. Appellant did not attend the hearing. *Id.* On October 5, 2015, Mr. Miller posted on the home and issued to appellant a Notice of Noncompliance and Order to Vacate the Property. T. at 64. Mr. Miller explained once that notice is issued, a home is "placarded with lead hazard warning signs," and its a violation of the law to remove the signs. *Id.* The home is uninhabitable until the lead is abated and the clearance examination is passed. T. at 65.

{¶ 18} On April 6, 2016, Mr. Miller discovered appellee was living in the home against the order to vacate. T. at 66-67. All the signs that Mr. Miller had placed on the home had been removed. T. at 67. At the time of the hearing on July 25, 2016, the health department still had not received a Certificate of Examination; therefore, the home should have remained vacant since October 2015. T. at 65, 77.

{¶ 19} Appellee testified while she was unpacking her belongings on March 28, 2016, she became aware of the lead issue from a previous tenant. T. at 106-107. She contacted Mr. Miller and left a message. T. at 109. Appellee had two minor children, ages eight and four. T. at 106. She stated she would have never moved into the home

if she had known of the lead issue because "I know that with lead, it actually affects the children, um, more than anything." *Id.* In fact, after Mr. Miller confirmed the lead issue, appellee moved her children out of the home immediately and had them stay with her mother because "I didn't want them to have to even get a chance of, you know, catchin' anything." T. at 112. The children never really lived in the home. *Id.* Appellee acknowledged she had paid appellant $550.00 for a security deposit, $300.00 for a utilities deposit, and $70.00 for prorated rent for March. T. at 102-103, 112.

{¶ 20} Mr. Cleavenger testified and stated lead abatement work was done on the home prior to appellee moving in. T. at 24. He was under the impression his former property manager, Melissa Bunnell, had handled the matter. T. at 25-28. Mr. Cleavenger was unaware a lead problem still existed until April 2016. T. at 26, 28.

{¶ 21} Melissa Bunnell testified and stated she was working for appellee when she retrieved a certified mail packet at the post office from the health department regarding the lead based paint abatement. T. at 82-83. Ms. Bunnell hand-delivered the packet to Mr. Cleavenger who "initially threw it away. What he did with it afterwards I don't know." T. at 84-85. Ms. Bunnell did not arrange for any specific contractor to perform the lead abatement work because "that was up to" Mr. Cleavenger. T. at 88.

{¶ 22} Given the testimony and evidence presented to the trial court, we find the trial court had ample evidence to support its determination that appellant had violated R.C. 5321.04(A)(1), and the home was uninhabitable due to the lead issues at the time the home was rented to appellee. The violation was more than "a mere technical violation" as argued by appellant in its brief at 9. Appellant's acts in this case were a clear violation of R.C. 5321.04(A)(1).

{¶ 23} As held by the Supreme Court of Ohio in *Sikora v. Wenzel,* 88 Ohio St.3d 493, syllabus, 2000-Ohio-406, 727 N.E.2d 1277, "[a] landlord's violation of the duties imposed by R.C. 5321.04 (A)(1) or 5321.04(A)(2) constitutes negligence *per se* * * *." Therefore, appellee is entitled to damages. She stated she would have never rented the home if she had been aware of the lead issue. The trial court's award of $920.00, appellee's initial payment upon signing the rental agreement, is supported in the record. The $550.00 security deposit and the $300.00 utilities deposit are listed in the March 25, 2016 rental agreement (Plaintiff's Exhibit 5). The $70.00 prorated rent for March is not disputed.

{¶ 24} Upon review, we find the trial court did not err in awarding appellee damages of $920.00 for a violation of R.C. 5321.04(A)(1).

{¶ 25} The sole assignment of error is denied.

{¶ 26} The judgment of the Canton Municipal Court of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/sg 323